**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-22906-ALTMAN/Reid**

**DONALD SPOTTS**,

    *Plaintiff,*

*v.*

**CARNIVAL CORPORATION**,

    *Defendant.*

_____/

## ORDER ON MOTION TO DISMISS

The Defendant, Carnival Corporation, has moved to dismiss the Plaintiff's Complaint. *See* Motion to Dismiss [ECF No. 5]. For the reasons we outline below, the Motion to Dismiss is **GRANTED in part and DENIED in part.**[1]

### THE FACTS[2]

On August 4, 2023, our Plaintiff, Donald Spotts, sued the Defendant, Carnival, asserting five claims for relief: Count I: Negligent Maintenance; Count II: Negligent Failure to Warn; Count III: Negligent Training of Personnel; Count IV: Negligent Supervision of Personnel; and Count V: Negligent Design, Construction, and Selection of Materials. *See generally* Complaint [ECF No. 1]. Spotts alleges that, on October 2, 2022, while he was a passenger on the cruise ship *Carnival Pride*,

> CARNIVAL allowed a large puddle of water, at least 2 feet by 25 feet, to accumulate and remain on the floor of the Lido Deck on the *Carnival Pride* . . . . Throughout the day, passengers repetitively and continuously spilled, dripped and/or tracked water onto the open deck floor of the Lido Deck. CARNIVAL failed to inspect and maintain this open deck with sufficient regularity to prevent this large accumulation of water.

---

[1] The Motion to Dismiss is ripe for resolution. *See* Plaintiff's Response to Defendant's Motion to Dismiss (the "Response") [ECF No. 6]; Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (the "Reply") [ECF No. 8].

[2] We take the following facts from the Plaintiff's Complaint and accept them as true for purposes of this Order.

CARNIVAL failed to provide warnings to the passengers that this area was wet and slippery. CARNIVAL failed to post any signs, cones, or other warnings, block off the area, put blowers on the floor of the area, put towels down on the area to dry the floor, and failed to guard over the area and use personnel to warn passengers. CARNIVAL failed to reasonably train and/or supervise its crew to reasonably ensure that its slip and fall procedures, policies and/or programs were used and applied to this area of the ship.

As a direct result, SPOTTS slipped and fell while walking on the Lido Deck of the *Carnival Pride* . . . . sustain[ing] severe and permanent injuries, including but not limited to a severed ham string which cannot be surgically reattached. These injuries are permanent and significantly affect the life and abilities of SPOTTS. These are extremely painful injuries and have caused and will continue to cause severe disability with permanent impairment.

*Id.* ¶¶ 11–13. Carnival now moves to dismiss all five counts of the Complaint under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion to Dismiss at 1. We'll address each of the Defendant's arguments in turn.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual

allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

To plead negligence in a maritime-tort case, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). This reasonable-care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). A plaintiff can establish constructive notice with evidence that the "defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 20 F.3d at 720 (cleaned up). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Ibid.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)).

## ANALYSIS

### I.    Actual or Constructive Notice

In its first argument for dismissal—which applies to all five counts—Carnival argues that the "Plaintiff fails to plausibly allege with sufficient particularity that Defendant has actual or constructive notice of the risk creating condition that caused his alleged injury. Plaintiff's allegations regarding notice are speculative, conclusory and lack support regarding how Defendant knew or should have

known that the alleged dangerous condition existed." Motion to Dismiss at 7. We disagree. Especially at this early stage of the case, Spotts has alleged sufficient facts to establish that Carnival had constructive notice of the defective condition onboard the *Carnival Pride*.

A plaintiff can "establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Guevara*, 20 F.3d at 720 (cleaned up). That's exactly what Spotts alleges in his Complaint:

> Prior similar incidents show evidence that CARNIVAL had notice of the dangerous condition here. CARNIVAL documents slip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. Examples of prior similar incidents known to date include the following:
>
> a. CARNIVAL identified more than 40 prior instances when a passenger slipped and fell on a wet floor on the Lido deck, and more than half of those (25) occurred on the *Carnival Pride*. *See Arouza-Pai v. Carnival Corp.*, 2022 U.S. Dist. LEXIS 226795 (S.D. Fla. Dec. 16, 2022). *See Arouza-Pai v. Carnival Corp.*, Case No. 21-CV-23511-WILLIAMS/MCALILEY, ECF No. 62 at ¶ 14f & ECF No. 62-4 (CARNIVAL's summary which was provided in discovery identifying prior slip and fall incident on the Lido Deck of the *Carnival Pride* and its sister ships).
>
> b. Passenger Alysia A. Denize was severely injured when she slipped and fell on the Lido Deck on board the *Carnival Pride* on January 2, 2022. *Alysia A. Denize v. Carnival Corporation*, Case Number 1:22-cv-24111.
>
> c. Passenger Ronald Kercher was severely injured when [he] slipped and fell on the Lido Deck on board the *Carnival Pride* on March 21, 2018. *Ronald Kercher v. Carnival Corporation*, Case Number 1:19-cv-21467.

Complaint ¶ 14.

Courts in this District consistently find similar allegations sufficient to establish constructive notice on a motion to dismiss. In *Fawcett v. Carnival Corp.*, for example, Chief Judge Altonaga held that the plaintiff had "adequately allege[d] the existence of prior similar incidents" where the plaintiff "identifie[d] numerous slip-and-fall events, including fall incidents on wet flooring in the Lido Marketplace dining area on the Lido Deck of the *Breeze*—a vessel of the same class as the *Magic*—and slip and fall incidents specifically on wet or slippery areas of the Lido Deck of the *Magic*" and listed

"specific dates and cite[d] cases associated with these incidents." *Fawcett v. Carnival Corp.*, 2023 WL

4424195, at *3 (S.D. Fla. July 10, 2023) (Altonaga, C.J.). As Chief Judge Altonaga explained:

> Defendant . . . insists Plaintiff does not provide "enough information to analyze
> whether these prior incidents meet the requisite substantial similarity doctrine" and
> argues the cited incidents cannot impute notice because none of them occurred near
> the pool . . . . The parties spill much ink discussing the finer points of substantial
> similarity . . . . But the cases the parties discuss are mostly inapplicable here because
> they were decided either at summary judgment or on a directed verdict — after the
> factual record had been developed.
>
> In any event, the "'substantial similarity' doctrine does not require identical
> circumstances[ ] and allows for some play in the joints depending on the scenario
> presented and the desired use of the evidence." (Resp. 1–2 (alteration added; quoting
> *Sorrels*, 796 F.3d at 1287)). Plaintiff's injury occurred on the Lido Deck of the *Magic*,
> and Plaintiff alleges "prior similar incidents" occurred on the Lido Deck of the Magic
> or a similarly configured vessel . . . . As explained, that is enough to plausibly plead
> that Defendant had notice of the dangerous condition. Whether the allegedly prior
> similar incidents are indeed so similar as to impute notice to Defendant are questions
> the Court will not resolve on a motion to dismiss.

*Id.* at *4; *see also Green v. Carnival Corp.*, 2022 WL 2702789, at *4 (S.D. Fla. July 12, 2022) (Bloom, J.)

("Plaintiff alleges fifteen (15) prior substantially similar incidents . . . . [These] allegations support that

[d]efendant was on constructive notice of a risk-creating condition that was recurring in the same

location on its vessels."); *Castillo v. NCL Bahamas Ltd.*, 2018 WL 1796260, at *3–4 (S.D. Fla. Jan. 5,

2018) (Garber, Mag. J.), *report and recommendation adopted*, 2018 WL 1795442 (S.D. Fla. Feb. 23, 2018)

(Scola, J.) (finding facts "sufficient to overcome [d]efendant's motion to dismiss" where the plaintiff

alleged that "NCL was on actual or apparent notice of the danger due to . . . numerous prior slip/trip

and falls on the same/similar deck surfaces on most [of] the vessels in its large fleet" and that "NCL

was also on notice of the dangerous condition by virtue of its legal and risk management departments'

investigations and defense of countless substantially similar cases on a fleet wide basis"); *Pride v.

Carnival Corp.*, 2023 WL 6907813, at *5 (S.D. Fla. Oct. 19, 2023) (Bloom, J.) ("Plaintiff has provided

full names and dates of passengers who also allegedly fell on the same ship . . . and on the same deck

material prior to [p]laintiff's incident . . . . Those allegations support the inference that a substantially

similar incident occurred due to a substantially similar condition. Accepting the allegations as true, [p]laintiff plausibly alleges that [d]efendant had constructive notice based on substantially similar incidents and conditions.").[3]

Carnival counters that Alysia Denize (whom the Plaintiff says was injured in a similar incident) is "alleged to have fallen in the dining area of the Lido Deck, slipping on a recently mopped area near a transition between a carpeted surface and a hard floor surface," whereas our Plaintiff doesn't allege "where on the expansive Lido deck [his] incident occurred." Motion to Dismiss at 8. But the prior similar incidents needn't be identical to survive a motion to dismiss. *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) ("The 'substantial similarity' doctrine does not require identical circumstances[.]"). And we think Spotts's allegations of prior incidents are sufficiently detailed to pass muster at this early phase of the litigation. *See Fawcett*, 2023 WL 4424195, at *3 (finding allegations of "fall incidents . . . on wet or slippery areas of the Lido Deck" sufficient to allege "the existence of prior similar incidents . . . . push[ing] [p]laintiff's claims beyond mere conclusory recitals" (cleaned up)). In any event, "whether the alleged incidents are in fact substantially similar as to give notice is an issue of fact, which the Court need not resolve at the dismissal stage." *Lopez v. Carnival Corp.*, 2022 WL 4598657, at *3 (S.D. Fla. Sept. 30, 2022) (Bloom, J.).

---

[3] *Cf. Holland v. Carnival Corp.*, 50 F.4th 1088, 1096 (11th Cir. 2022) (concluding that the plaintiff failed to plausibly allege that Carnival had constructive notice of a dangerous condition where he provided only "conclusory allegations that 'there are frequently spills on the staircase' and 'prior slip and fall incidents on this staircase'" and didn't allege "*any facts concerning a substantially similar incident* to the one at issue" (emphasis added)); *Anders v. Carnival Corp.*, 2023 WL 4252426, at *3, 5 (S.D. Fla. June 29, 2023) (Altonaga, C.J.) (admonishing that reliance on "formulaic" allegations of substantially similar incidents—such as allegations that "other passengers" were injured in a similar way, "without alleging the specifics of those incidents"—"may be insufficient to plausibly allege [a defendant's] constructive notice"). Here, Spotts has provided the full names of two passengers who, in the last five years, fell on the same deck of the same ship as he did. He's also given us exact dates for those two incidents. Our Complaint thus differs in salient ways from the allegations the Eleventh Circuit found insufficient in *Holland*.

Carnival also contends that the incidents described in the Complaint are "too remote in time . . . each occurring over three (3) years prior to his alleged incident on October 2, 2022." Motion to Dismiss at 9. The Eleventh Circuit has (it's true) said that, "[u]nder the substantial similarity doctrine, such evidence is [only] admissible if: (1) the circumstances of the prior incidents are substantially similar to those at issue in the present action and (2) the prior incidents are not too remote in time." *Jones*, 861 F.2d at 661–62. But the prior incidents the Plaintiff has identified—both of which occurred within the five years before his accident—aren't (at least at this stage of the case) "too remote in time." *See, e.g.*, *Smith v. Carnival Corp. & PLC*, 2023 WL 8370478, at *13 (S.D. Fla. Dec. 4, 2023) (Bloom, J.) (denying motion in limine to exclude evidence of a prior incident where the plaintiff's "incident occurred on July 8, 2022, less than four years after Mr. McWilliams' incident, and is therefore not too remote in time"). At this stage of the case, in short, the Plaintiff's allegations of substantially similar incidents are sufficient to support an inference that Carnival had constructive notice of the dangerous condition on the floor of the Lido Deck. We therefore reject Carnival's contention that the Plaintiff "has failed to adequately plead Defendant's notice." Motion to Dismiss at 2.[4]

## II.     Counts III & IV: Negligent Training and Negligent Supervision

Negligent training and negligent supervision "are both recognized duties under federal maritime law." *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021) (Torres, Mag. J.). "Negligent training occurs when an employer was negligent in the implementation or operation of [a] training program and this negligence caused a plaintiff's injury." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1304 (S.D. Fla. 2021) (Moore, J.) (cleaned up). Negligent supervision, on the other hand, "occurs when, during the course of employment, the employer becomes aware or should have become

---

[4] Because we've determined that the Plaintiff's allegations regarding prior incidents are sufficient for now, we needn't address whether his alternative arguments for notice—such as the size of the puddle or the fact that Carnival has "policies and procedures applicable to the subject area," Complaint ¶ 21—are "conclusory[ ] and speculative," Motion to Dismiss at 7.

aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Ibid.* (cleaned up). For a plaintiff "to state a claim for negligent training, he must show that [the defendant] was negligent in the implementation or operation of [a] training program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). To state a claim under a theory of negligent supervision, by contrast, a plaintiff "must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *Quashen*, 576 F. Supp. 3d at 1304. As to both claims, "it is well settled that general maritime law does not recognize a claim of negligence that is premised upon a company's general policies and operations." *Id.* at 1297.

Starting with negligent training, Spotts alleges that Carnival has a "duty of care [which] includes training its crew members to inspect, clean, dry and warn passengers about dangerous conditions on board the *Carnival Pride*[.]" Complaint ¶ 40. "Specifically," he adds, Carnival "trains its crew members to inspect and maintain the deck areas in a clean and dry condition. CARNIVAL's trainings and procedures instruct crew members that its floors are slippery when wet which can cause passengers to slip and fall and get injured. CARNIVAL also trains and created procedures which require crew members to place wet floor signs on walkways that become repetitively wet and/or are known to be wet." *Id.* ¶ 21. Spotts claims that Carnival "failed to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors" because, "[h]ad CARNIVAL properly trained its crew members to inspect, clean, dry, and warn passengers about the dangerous conditions on board the *Carnival Pride*, including [the] area where SPOTTS slipped and fell, the crewmember would have inspected, cleaned, dried, and warned SPOTTS about the dangerous condition." *Id.* ¶¶ 44, 46. "Had CARNIVAL properly trained its crew members, the dangerous condition would not have existed. Had CARNIVAL properly

trained its crew members SPOTTS would have been aware of the dangerous condition. SPOTTS therefore would never have slipped, fallen and been injured on October 2, 2022." *Id.* ¶ 46.

These allegations are sufficient to state a claim. Remember, "to state a claim for negligent training, [a plaintiff] must [allege] that [the defendant] was negligent in the implementation or operation of [a] training program. He cannot merely challenge the content of the program." *Mercado*, 407 F.3d at 1162. And that's exactly what Spotts has alleged here—that Carnival "trains its crew members to inspect and maintain the deck areas in a clean and dry condition," Complaint ¶ 21, but that, on the day of his accident, Carnival "was negligent by failing to reasonably train its crewmembers to inspect, clean, dry and warn passengers of the dangerous conditions on board the *Carnival Pride* including the subject area where SPOTTS slipped and fell," *id.* ¶ 44. Our colleague in the Middle District of Florida found similar allegations sufficient in *Harrison*:

> [P]laintiff [Harrison] alleges that she was harmed when Red Bull's employee operated his handcart in a negligent manner while distributing Red Bull's product to a Circle K convenience store. Harrison contends that her injuries resulted from Red Bull's negligent failure to train its employees regarding safe delivery of its product to the convenience store. Drawing all permissible inferences in Harrison's favor, the [c]omplaint pleads sufficient facts to show that Harrison, as a Circle K customer, was in a reasonably foreseeable zone of risk from the actions of Red Bull's delivery employee such that a legal duty of care in training the delivery employee ran from Red Bull to Harrison. Accordingly, the [c]ourt finds that plaintiff has pled sufficient facts to sustain her theory of negligent training.

*Harrison v. Red Bull Distrib. Co., Inc.*, 2019 WL 1117022, at *2–3 (M.D. Fla. Mar. 11, 2019) (Steele, J.). We think Spotts has done the same here.

True, a plaintiff "cannot state a claim for . . . negligent training . . . with boilerplate allegations," *Diaz*, 555 F. Supp. 3d at 1311, and courts in our District have granted motions to dismiss claims of negligent training where "those claims are devoid of any facts" and provide "no details of . . . facts specific to the [ship], the [ship's] crew, or even with respect to Carnival as a company," *Donaldson v. Carnival Corp.*, 2020 WL 6801883, at *2–3 (S.D. Fla. Nov. 19, 2020) (Scola, J.). But our Plaintiff *has* made specific factual allegations about Carnival's "trainings and procedures," Complaint ¶ 21, and he

*does* claim that Carnival failed to "properly train[ ] its crew members to inspect, clean, dry, and warn passengers about the dangerous conditions on board the *Carnival Pride*, including [the] area where SPOTTS slipped and fell," *id.* ¶ 44. Since the Plaintiff hasn't had the chance to take any discovery, we can't imagine asking a plaintiff to provide more detail than that. We therefore **DENY** the Motion to Dismiss Count III.

We come out the other way on Count IV, where Spotts alleges that "CARNIVAL breached its duty of care owed to SPOTTS and was negligent by failing to reasonably supervise its crew members to ensure that its crew members were properly inspecting, cleaning, drying and warning passengers of the dangerous conditions on board the *Carnival Pride* including the subject area where SPOTTS slipped and fell on October 2, 2022." *Id.* ¶ 54. He also alleges:

> At the time SPOTTS fell on the Lido deck, the crewmember that was responsible for warning, cleaning, drying and inspecting that area failed to do so. Because that crew member was not properly supervised, that crew member failed to properly and adequately warn passengers, like SPOTTS, of the dangerous conditions on board the *Carnival Pride* including the subject area where SPOTTS slipped and fell on October 2, 2022. Because that crew member was not properly supervised, that crew member also failed to properly inspect, clean, and dry the area.

> CARNIVAL's failure to properly supervise its crew members proximately caused SPOTTS['s] injuries. Had CARNIVAL properly supervised its crew members to ensure that the crew members were properly inspecting, cleaning, drying, and warning passengers about the dangerous conditions on board the *Carnival Pride*, including subject area where SPOTTS slipped and fell on October 2, 2022, the crew member would have inspected, cleaned, dried, and warned SPOTTS about the dangerous condition. If CARNIVAL had properly supervised its crew members, the dangerous condition would not have existed. If CARNIVAL had properly supervised its crew member SPOTTS would have been aware of the dangerous condition. SPOTTS therefore would never have slipped, fallen and been injured on the Lido deck on October 2, 2022.

*Id.* ¶¶ 55–56.

As we've indicated, "[t]o state a claim for negligent supervision under Florida law, a plaintiff must allege that an employer had notice that an employee was unfit but unreasonably failed to investigate the employee and take corrective action." *Erickson v. Manatee Cnty. Sheriff's Dep't*, 824 F.

App'x 861, 865 (11th Cir. 2020); *see also Doe v. NCL (Bahamas) Ltd.*, 2018 WL 3848421, at *3 (S.D. Fla. Aug. 13, 2018) (Scola, J.) ("To state a claim for negligent supervision, a plaintiff must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." (cleaned up)). Here, Spotts hasn't alleged that Carnival knew or should have known that its crewmembers were unfit—nor has he claimed that Carnival unreasonably failed to investigate or take corrective action against these specific crewmembers. We thus **GRANT** the Motion to Dismiss Count IV **with leave to amend**.

## IV.     Count V: Negligent Design

"[L]iability based on negligent design requires [the p]laintiff to produce evidence that the [d]efendant 'actually created, participated in or approved' the alleged improper design." *Hoover v. NCL (Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020) (Cooke, J.) (quoting *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012)). "In addition, a defendant can only be liable for negligent design 'if it had actual or constructive notice of [the] hazardous condition.'" *Liles v. Carnival Corp. & PLC*, 2023 WL 34644, at *2 (S.D. Fla. Jan. 4, 2023) (Bloom, J.) (quoting *Groves*, 463 F. App'x at 837).

Count V of the Complaint asserts that Carnival "breached its duty of care owed to SPOTTS and was negligent by approving, designing, constructing, and/or selecting, the flooring for the Lido deck on board the *Carnival Pride*." Complaint ¶ 65. The Complaint also includes the following facts in support of its negligent-design claim:

> CARNIVAL has all of its ships, including the *Carnival Pride*, custom made to its own design and specifications. CARNIVAL participated in and/or approved of the design of the subject area including the subject flooring. CARNIVAL participated in and/or approved of the selection of the materials for the subject area including the subject flooring. CARNIVAL participated in and/or approved of the installation of the materials for the subject area including the subject flooring. CARNIVAL chose to install this same and/or similar flooring throughout its fleet. CARNIVAL continues to repair, modify and/or install the same and/or similar flooring on all its ships, including the *Carnival Pride*. At all times CARNIVAL had the ultimate control over the design and construction of the *Carnival Pride*. CARNIVAL had the right to inspect

both the designs on paper and the design and construction at the yard. CARNIVAL had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the *Carnival Pride* including the subject area and flooring. CARNIVAL had the right to reject any and all items, designs and construction. CARNIVAL holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved. CARNIVAL approved of the design, construction, and selection of materials of the subject area demonstrated by the fact that CARNIVAL has operated and maintained the ship continuously since on or about 2001.

CARNIVAL had actual notice and/or constructive notice of the dangerous condition [aboard the *Carnival Pride*] . . . . CARNIVAL knew or should have known that the subject area including the flooring it chose and installed on the Lido Deck on the *Carnival Pride* was unreasonably dangerous and slippery when wet . . . . CARNIVAL's negligent design, construction and selection of the flooring for the Lido deck on board the *Carnival Pride* proximately caused SPOTTS' injuries.

*Id.* ¶¶ 61–63, 66.

Based on these allegations, we think that Spotts has done just enough to state a claim for negligent design. *See Donaldson*, 2020 WL 6801883, at *4 (holding that, "[w]hile the [plaintiffs'] allegations are not well developed, they do withstand scrutiny at the motion to dismiss stage" because the complaint stated that the "'[d]efendant participated in the design process'; 'approved of the Carnival *Dream*, including providing specifications to the shipbuilder'; and . . . 'maintains the contractual right to participate, review, modify, and/or reject the design plans'" (cleaned up)); *Canyes v. Carnival Corp.*, 2022 WL 4270001, at *3–4 (S.D. Fla. Sept. 15, 2022) (Bloom, J.) (denying motion to dismiss negligent-design claim where the complaint alleged that the defendant "actively participated in the design and construction of the Carnival *Horizon*" and "actively participated in the design and construction of the cabin" where the plaintiff was injured, "including the upper berth bed [and] the placement of the refrigerator adjacent to the wall on the floor"); *cf. Liles*, 2023 WL 34644, at *2–3 (granting motion to dismiss negligent-design claim where the plaintiff alleged "*no* facts . . . in support of [her] conclusory assertions that Carnival participated in the design process of the tender and ramp, which are not on or part of the *Vista*, or that Carnival otherwise approved those designs" (emphasis added)). Because Spotts has alleged that Carnival participated in (or approved of) the design of the

area that caused his injury—in this case, the ship's Lido Deck—his allegations are sufficient to survive a motion to dismiss.

###### V.      Shotgun Pleading

Finally, Carnival argues that the Plaintiff's Complaint should be dismissed as a shotgun pleading[.]" Motion to Dismiss at 15. To comply with federal pleading standards, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Federal Rules also require plaintiffs to "state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). As the Eleventh Circuit has explained, a complaint is an impermissible "shotgun" pleading if it:

> (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019). Here, Carnival contends that the Complaint "should be dismissed as a shotgun pleading under the second and third types of shotgun pleadings." Motion to Dismiss at 15. We disagree.

As to the second type of shotgun pleading, Carnival offers only the following: "Plaintiff's allegations under all Counts of his Complaint, are conclusory, speculative, and vague. None of Plaintiff's allegations are obviously connected to a particular cause of action, and they fail to cross the threshold from possible to plausible." *Ibid.* Here, Carnival paints with too broad a brush. As we've explained, the Plaintiff has (for the most part) alleged sufficient facts to survive the motion to dismiss. And where he hasn't—*i.e.*, in his negligent-supervision claim (Count IV)—we've outlined for the Plaintiff the simple steps he must take to plead a viable claim. The Complaint is therefore not "'replete with conclusory, vague, and immaterial facts not obviously connected to any cause of action,' . . . such that it falls under the second category of shotgun pleading." *O.E. Wheel Distribs., LLC v. Mobile Hi-*

*Tech Wheels, LLC*, 2022 WL 2918028, at *4 (M.D. Fla. July 25, 2022) (Honeywell, J.) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015)).

Carnival also argues that the Complaint falls into the third category of shotgun pleadings because it fails to "separate into different counts 'each cause of action or claim for relief.'" Motion to Dismiss at 15 (quoting *Weiland*, 792 F.3d at 1323). The Complaint plainly sets forth five separate counts, and the Defendant doesn't suggest otherwise. Instead, Carnival claims that, "under each of [the Plaintiff's] Counts for Negligence, Plaintiff adopts and re-alleges every allegation he made in paragraphs 1 through 23 of his Complaint," which (Carnival says) "are riddled with alleged failures which require their own, separate causes of actions." *Id.* at 15–16. As Carnival explains:

> Paragraph 11 states: Carnival "failed to provide warnings to the passengers that this area was wet and slippery[,]" and then goes on to further state Carnival "failed to train, supervise its crew to reasonably ensure that its slip and fall procedures, policies and/or programs were used and applied to this area of the ship." [D.E. 1, ¶ 11]. Thus, Paragraph 11 incorporates by reference a Negligent Failure to Warn, Negligent Training, and Negligent Supervision claim into every count of the Complaint. Plaintiff's incorporation of each of these paragraphs, such as those which reference negligence[,] failure to train or supervise crewmembers, or negligent design, cannot be used to support a finding of notice in direct negligence claims, and as such, should not have been incorporated into each count of his Complaint. Such claims should be set forth independently, with their respective elements, rather than listed with numerous other conclusory allegations to support a finding of notice for direct negligence claims.

*Id.* at 16.

Again, we disagree. For one thing, the Plaintiff's claims (Negligent Maintenance, Negligent Failure to Warn, Negligent Training of Personnel, Negligent Supervision of Personnel, and Negligent Design, Construction, and Selection of Materials) *are* set forth in five separate counts, *see* Complaint at 9–19—as the Defendant appears to concede, *see* Motion to Dismiss at 1 (requesting "this Honorable Court to render an Order dismissing Plaintiff's Complaint for failure to state a claim upon which relief can be granted in Counts I-V in his Complaint").

For another, paragraph 11 of the Complaint—where (according to Carnival) the Plaintiff has commingled his claims—strikes us as nothing more than an introductory paragraph that properly (and helpfully) lists out the various ways in which the Plaintiff claims the Defendant was negligent:

> **DESCRIPTION OF THE INCIDENT**. CARNIVAL allowed a large puddle of water, at least 2 feet by 25 feet, to accumulate and remain on the floor of the Lido Deck on the Carnival Pride on October 2, 2022. CARNIVAL's open deck pools, spas, showers and water and ice machines were used by passengers for several hours. Throughout the day, passengers repetitively and continuously spilled, dripped and/or tracked water onto the open deck floor of the Lido Deck. CARNIVAL failed to inspect and maintain this open deck with sufficient regularity to prevent this large accumulation of water. CARNIVAL failed to provide warnings to the passengers that this area was wet and slippery. CARNIVAL failed to post any signs, cones, or other warnings, block off the area, put blowers on the floor of the area, put towels down on the area to dry the floor, and failed to guard over the area and use personnel to warn passengers. CARNIVAL failed to reasonably train and/or supervise its crew to reasonably ensure that its slip and fall procedures, policies and/or programs were used and applied to this area of the ship.

Complaint ¶ 11. Given that the Complaint plainly contains five separate counts, we won't read an introductory paragraph that's innocuously titled "Description of the Incident" as an improper attempt by the Plaintiff to commingle his claims. *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (noting that multiple claims should be presented separately under Rule 10(b) "and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading"). In our case, we know that Carnival was able to "discern what the plaintiff [was] claiming" because its Motion to Dismiss attacks Counts III–V of the Complaint separately—noting the different ways in which the Plaintiff has (in Carnival's view) failed to state viable claims for negligent training, supervision, and design. *See generally* Motion to Dismiss. Since Spotts presents his claims for negligence separately, his Complaint doesn't "commit[ ] the sin of not separating into a different count each cause of action or claim for relief," *Weiland*, 792 F.3d at 1323, and therefore isn't a shotgun pleading.

*          *          *

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss the Complaint on the ground that the Plaintiff failed to properly plead actual or constructive notice is **DENIED**.

2. The Motion to Dismiss the Complaint as a shotgun pleading is **DENIED**.

3. The Defendant's Motion to Dismiss Count III is **DENIED**.

4. The Defendant's Motion to Dismiss Count IV is **GRANTED** *without prejudice*.

5. The Defendant's Motion to Dismiss Count V is **DENIED**.

6. If the Plaintiff wants to amend Count IV, he may file an amended complaint by January 24, 2024.

**DONE AND ORDERED** in the Southern District of Florida on January 10, 2024.


_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**


cc:    counsel of record